Barbara TATA, Appellant,

v.

Amanda TATA and Jose Vargas, Appellees.

No. 4D16–2420.

District Court of Appeal of Florida, Fourth District.

Nov. 9, 2016.

---

Robin Bresky and Jeremy Dicker of Law Offices of Robin Bresky, Boca Raton, for appellant.

Erica J. Busch, St. Petersburg, for appellees.

MAY, J.

The maternal grandmother appeals an order granting the father's motion to set aside or vacate the final order on temporary custody.[1] She argues the trial court erred in vacating the order for nine reasons. We disagree and affirm.

The child's parents were married in 2004, but divorced in 2005. The parents entered into a custody agreement in which the mother became the primary residential parent. The final judgment of dissolution adopted the agreement.

In 2006, the father was convicted of armed robbery and sentenced to ten years in prison. The mother died in 2007. The child lived with the maternal grandmother and paternal grandparents.

In 2007, the maternal grandmother petitioned for a change of custody. She alleged the father was currently incarcerated, and had no objection. She asserted that custody had been resolved in an attached settlement agreement, but no agreement was attached.[2]

---

1. We stayed the order pending disposition of this appeal.

2. In her motion for attorney's fees, the maternal grandmother claims she has now located the agreement in a file cabinet at home.

No summons issued, but counsel for the maternal grandmother prepared a notice of hearing, certifying service on the father at the Hendry Correctional Center. The father did not receive notice or a summons. The first notice set the original petition for hearing on November 20, 2007; the hearing was actually held in February 2008. The father did not appear either in person or by telephone. There is no transcript of the hearing.

The maternal grandmother *ore tenus* moved to amend her petition from a change in custody to a request for temporary custody of the minor child by extended family. On March 13, 2008, the trial court granted the motion. The next day, the maternal grandmother filed a written petition for temporary custody of the child by extended family. The petition did not certify service on the father. The petition alleged the father had given written consent. The trial court granted the amended petition.

In the order, the trial court checked a box indicating the father had consented to the order in writing. The order contained a check in a line finding the maternal grandmother "fit, able and willing" to care for the child based on the agreement between her and the father. The order also contained a finding that the change in custody was in the best interests of the child. The order provided that service was made on the father by mail. The father neither moved for rehearing nor appealed the order.

Six years later, the father was released from prison. The following year, in June 2015, he petitioned to determine paternity and other relief in a separate proceeding. He referred to the March 2008 order in his petition. He later voluntarily dismissed the petition.

The father also moved to terminate the order in July 2015. In that motion, he failed to argue that the March 2008 order was void due to lack of notice. Instead, he argued that under Chapter 751, the court should terminate the order because he objected to it. He also argued that it was in the best interests of the child to terminate custody with the maternal grandmother and grant him sole custody.

The maternal grandmother responded, arguing the father was required to petition to modify or terminate the temporary custody of the maternal grandmother and prove he was a fit parent. She argued the father was an unfit parent due to his previous incarcerations, criminal activity, current outstanding warrants, lack of stable housing and income, and because he resided three hours from the child's current residence and his other child from another relationship. She claimed other grounds in opposition to the father's motion to terminate temporary custody, and moved for dismissal.

The father filed an "urgent motion to establish temporary timesharing/visitation schedule" in February 2016. He asserted that he agreed to concurrent custody between his parents and the maternal grandmother, but not temporary custody to the maternal grandmother.

In February 2016, the father moved to vacate the temporary custody order. He asserted that neither a summons issued nor did he receive notice prior to the hearing and entry of the order. He never consented to temporary custody with the maternal grandmother as ordered. And, while the order indicated he had consented in writing, he said he did not. He argued that the denial of procedural due process rendered the custody order void.

The maternal grandmother responded, arguing the custody order was not void because it contained findings that the father consented in writing, the maternal grandmother was fit and willing to care for the child, and it was in the child's best

interest for the maternal grandmother to have custody. She claimed the father waived any challenge to personal jurisdiction, and was barred from collaterally challenging the order based on laches.

The trial court heard the motion in June 2016.[3] The maternal grandmother testified that the father had given her lawyer written consent. The father testified that he was not notified of the proceedings, was never served with the petition for temporary custody, and did not waive service of process. He did not sign a written consent. He did not learn of the order until after its entry.

At the close of the hearing, the trial court found no evidence of the father's consent. A checked box on a form order was "not good enough." The court observed that section 751.04, Florida Statutes (2008), required "reasonable notice and opportunity to be heard ... to the parents of the minor child by service of process, either personal or constructive." The court concluded that the maternal grandmother had blatantly failed to comply with the statute.

The trial court treated the father's motion as a rule 1.540(b) motion to set aside a final judgment as void for lack of service, which could be raised at any time. The court found the father did not receive notice of the hearing. The only proof of consent was a checked box indicating the father consented in writing, but "[t]here [wa]s no consent attached to the order. There's no consent attached to the petition and there's no consent docketed on the Court file. So the only reason to believe that he consented is because there is a box checked on the order itself."

The court found the father did not waive his rights by filing other proceedings. The

trial court granted the motion to vacate based on the maternal grandmother's failure to give proper notice to the father. The court vacated the March 2008 order, and directed surrender of the child. From this order, the maternal grandmother has appealed.

██ A trial court's order granting a motion to vacate can be overturned only upon a showing of a gross abuse of discretion. *Halpern v. Houser*, 949 So.2d 1155, 1157 (Fla. 4th DCA 2007) (citing *N. Shore Hospital, Inc. v. Barber*, 143 So.2d 849, 852 (Fla.1962)). When the trial court grants relief from a judgment, the court imposes a greater burden to overturn that ruling. *Id.* (citing *Geer v. Jacobsen*, 880 So.2d 717, 720 (Fla. 2d DCA 2004)).

██ First, the maternal grandmother argues the trial court erred in finding that the father was denied due process. She argues the father gave his written consent to the change of custody order. But, the father testified otherwise and the trial court accepted his testimony. The court's finding on this issue is supported by competent substantial evidence. *Cf. Mitchell v. Northstar Panama City Beach, Inc.*, 171 So.3d 833 (Fla. 1st DCA 2015); *Suleiman v. Yunis*, 168 So.3d 319 (Fla. 5th DCA 2015).

Second, the maternal grandmother argues the father's written consent was unnecessary under section 751.02(1), Florida Statutes (2008). But, section 751.02 governs who may bring a petition; it does not address proceedings in which notice and opportunity to be heard are denied. Section 751.04 provides that reasonable notice and an opportunity to be heard must be provided before any decree is made under sections 751.01 through 751.05. The trial

---

**3.** The trial court was a successor judge. The judge who entered the custody order for the maternal grandmother had retired.

court found both notice and the opportunity to be heard were denied to the father.

Third, the maternal grandmother argues the trial court erred in granting relief based on the failure to attach the written consent to her petition. She notes the current version of section 751.03, Florida Statutes, now requires a copy of the parent(s)' consent be attached to the petition, but the 2008 version did not. Because the trial court did not base its decision on the lack of written consent, this issue lacks merit. While the court noted the lack of written consent, it based its conclusion on the lack of notice to the father.

Fourth, the maternal grandmother argues that even if written consent were statutorily required, the record demonstrated the father gave the required consent. However, there is no evidence to support that assertion. Even the maternal grandmother testified she never spoke to the father about written consent or saw a written consent. Rather, she relied on what her attorney had told her.

Fifth, the maternal grandmother claims that because the order reflected the father had consented to temporary custody, there must have been competent substantial evidence to support that ruling. There was no such evidence. Nevertheless, the maternal grandmother suggests the father's consent to concurrent custody between his parents and the maternal grandmother constituted written consent to her sole custody. Even if the record demonstrated such prior consent, it would not equate to consent to the maternal grandmother's sole temporary custody.

■ Sixth, the maternal grandmother argues laches should prohibit the father from moving to vacate the custody order. The equitable defense of laches requires "an unreasonable delay in asserting a known right *which causes undue prejudice to the party against whom the claim is asserted.*" *Baker v. Baker*, 920 So.2d 689,

693 (Fla. 2d DCA 2006) (emphasis in original) (citing *Appalachian, Inc. v. Olson*, 468 So.2d 266, 269 (Fla. 2d DCA 1985)). "Delay, standing alone, is not enough." *Id.* (citing *Brumby v. Brumby*, 647 So.2d 330, 331 (Fla. 4th DCA 1994)). Here, the maternal grandmother has failed to show any prejudice by the father's delay.

Seventh, the maternal grandmother argues that the father was required to demonstrate his fitness to be a parent or her consent to change the temporary custody, pursuant to section 751.05(6), Florida Statutes (2008). This subsection applies to petitions to modify or terminate temporary custody. It does not address the father's right to file a rule 1.540(b)(4) motion.

Eighth, the maternal grandmother argues the father waived the right to seek relief from the order by seeking other relief from the court after the 2008 custody order. The father filed a petition for paternity determination in a separate case, which he later dismissed, a motion to terminate custody in 2015, and a motion on temporary timesharing in 2016. She argues the father needed to raise the issue within a reasonable time.

■ The maternal grandmother simply failed to establish a waiver by the father. As the father argues, and the trial court found, a void order is a nullity. As such, it may be set aside at any time. *See Shiver v. Wharton*, 9 So.3d 687, 690 (Fla. 4th DCA 2009); *M.L. Builders, Inc. v. Reserve Developers, LLP.*, 769 So.2d 1079, 1082 (Fla. 4th DCA 2000).

■ Finally, the maternal grandmother argues the trial court erred in refusing to hear "critical evidence" on the best interests of the child and the father's fitness to parent. The trial court correctly ruled that these were not proper issues for a motion to vacate. Those criteria apply to petitions to change custody. § 751.05(6),

Fla. Stat. (2008). This was a motion to vacate a void judgment under Florida Rule of Civil Procedure 1.540(b).

For the reasons expressed, we affirm the trial court's order vacating the 2008 custody order and remand the case to the trial court for proceedings consistent with this opinion.

*Affirmed.*

WARNER J., concurs.

CONNER, J., dissents with opinion.

CONNER, J., dissenting.

I respectfully dissent from the affirmance of the trial court. My view of the record on appeal leads me to conclude the trial court did not properly consider the issues of laches and waiver raised by the appellant/grandmother in opposing the appellee's/father's arguments that the custody order awarding the appellant/grandmother custody of the child is void for lack of notice of the proceedings and personal service. As the appellant/grandmother accurately argues, the right to contest a personal jurisdiction and notice can be waived by failure to assert the procedural defect in subsequent proceedings. *Johnson v. DOR*, 973 So.2d 1236, 1239 (Fla. 1st DCA 2008) ("We have held, moreover, that, although a court has already entered judgment, a party waives the right to contest personal jurisdiction by entering a general appearance without contesting personal jurisdiction at the same time."); *see Caldwell v. Caldwell*, 921 So.2d 759, 760 (Fla. 1st DCA 2006) (holding party lost right to contest default final judgment on grounds of defective service of process by entering general appearance without simultaneously contesting service of process or raising issue of personal jurisdiction); *Starks v. Howard*, 611 So.2d 52, 53–54 (Fla. 3d DCA 1992) (holding party alleging he never received notice of paternity action waived right to challenge final judgment of paternity on grounds of insuffi-

ciency of process by admitting paternity in subsequent proceedings). It appears to me, from the record on appeal, that is the situation in this case. I would reverse the order vacating the 2008 custody order.